The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Jaisal F. Correia. Please introduce yourself for the record and proceed with your argument. Daniel Marks Good morning, Your Honors. May it please the Court, Daniel Marks for the appellant Jaisal Correia. Your Honor, may I please reserve two minutes for rebuttal? Jaisal Correia Yes, you may. Daniel Marks Thank you very much. Your Honors, before addressing each of the specific issues raised in Mr. Correia's appeal, I want to address one common argument in the prosecution's opposition. The prosecution asserts at least three times in its brief that this Court can disregard any potential prejudice to Mr. Correia, whether from its improper closing, instructional errors, or spillover prejudice, because the jury referred to a, quote, discerning, jury returned a, quote, discerning verdict. That's wrong for two important reasons. First, the verdict in this case was not discerning, certainly not in the sense that this Court has used that term in cases like Bailey and Connolly. Here, the jury convicted Mr. Correia on 21 of 24 counts. Those included all of the wire fraud charges, all of the tax fraud charges, and all of the extortion charges related to marijuana vendors. It acquitted him on only three marginal charges that related to separate allegations and for which there really was no evidence at all, for example, count X, which was the kickback charge regarding Jen Correia in a case where neither Mr. Correia nor Ms. Andrade, excuse me, Ms. Andrade, where neither of them testified. So there was simply no basis for that verdict. Mr. Marks, have you identified any case law where we have defined or set the parameters for what we've considered discerning when we've commented that jury discernment can be a factor in a prejudice analysis? No, Your Honor. I'm not aware of a situation in which this Court has, in a principled or definitional way, tried to explain what that term means. So I think what we are forced to do is to infer from the facts of cases in which this Court has pointed to a discerning verdict, or sometimes referred to as a discriminating verdict, to satisfy itself that a defendant hasn't been prejudiced. That happens in cases like the famous Connolly case involving now Commissioner Cox of the BPD, in which the jury carefully parsed through individual allegations of perjury to make the determination that the defendant had told certain lies in the grand jury, but not others. That's the kind of careful analysis— What I'm doing is I'm struggling with the notion of why it couldn't fairly be said that a jury which singled out for not guilty verdicts three counts out of a total of, I think you said, 24, couldn't be termed discerning. I'm not commenting now on whether or not I think it's deserving of weight, but I do think it's deserving of the label. Well, discerning in the sense that it was a verdict to be sure. There were not guilty verdicts. There's no dispute about that. However, I think in order to apply that term with some meaning in the way the Court has, it needs to consider the nature of the guilty counts and the acquittals, both the number and the nature. Here, looking at the guilty counts, they were across-the-board convictions on the three core pillars of this case against Mr. Correa. It's not a situation, for example, where he was acquitted on a handful of wire fraud charges, but convicted of others. Convicted of cheating on one year's taxes, but acquitted of others. It was convictions on all counts with respect to all three of those core pieces of the case. Mr. Marks, like Judge Celia, I'm trying to extract some principles from your argument. I had thought you were going to argue, but you have not yet, that the fact that the trial judge set aside a number of the jury verdicts because, in his view, the elements of the crimes had not been proven by the government. The government has chosen not to trial judge has done that, at least as to a number of the counts. So, I said a minute ago, Your Honor, that I had two reasons, and you've just guessed what my second reason was. That's absolutely right. It wasn't a guess, Mr. Marks. What case law do you have to support that proposition? Well, there is no case because this is a very unusual situation. I'm not sure the court has ever been confronted with a case in which, post-trial, a district court judge vacated essentially half of the case, 10 of 21 guilty counts, most of the wire fraud case, and the entirety of the tax fraud case, and then was presented with the prosecution making the argument, nevertheless, that the jury was discerning or discriminating, sufficiently so that this court can disregard a possible prejudice of the defendant. I simply don't think it's consistent with this court's cases to say a jury that convicted a defendant without any sufficient evidence that there were wire communications for the charged checks, or a willful violation of a known legal duty, had sifted through the facts with sufficient care. Mr. Marks, isn't the logic of your argument that that would then force the government to cross-appeal and challenge that, setting aside the jury verdicts as error? From the government's point of view, it then involves a sort of side issue to the ultimate issue of guilt as to the verdicts which were not set aside. Not necessarily, Your Honor. I mean, certainly one way for the government to support its claim that the jury was discerning in the face of a post-trial decision like this one would be to cross-appeal and to persuade this court that, in fact, the jury got it right. Mr. Marks, I made that point. I said your argument creates an incentive for the government to have to do that on what, in some ways, may be viewed as a side issue. I think we have your two opening points, so could you move on to your next point? Sure. So the reason why we end up in this position, why this jury got it wrong, according to the trial judge, on 10 of the 21 counts, there are a number of reasons, and I want to start at the end. By the end, I mean the end of the trial and the end of the briefs with the issue about the improper closing argument. And I'd like to start there because I think this court's recent decision in Canty shows the way and explains why a new trial is necessary in this case, even under the plain error standard that both parties agree is applicable. And Canty, I'd add, is only the most recent in a line of cases that include Roberts, Arrieta-Agrassot, going all the way back to Manning, in which this court has found plain error in the context of improper closing arguments. Now, the analysis, the two-part analysis, is not subject to dispute and is relatively straightforward. It asks whether there was misconduct, and then, second, whether that misconduct was prejudicial. With regard to the misconduct here, the issue is that the prosecution made improper arguments about admitted evidence. Not that it talked about something that wasn't in the record, but made improper arguments about admitted evidence. About five minutes remaining. Five minutes. In the closing, it referred repeatedly, I think at least half a dozen times, to the voters of Fall River. It called Mr. Correa, sarcastically, the candidate of honest answers. It referred to him as the supposedly honest mayor who cared about the city. And perhaps most troublingly, it referred to him repeatedly as the type of person who would lie cheap and extort in the sense of having that criminal disposition. Those are the kinds of arguments that this court has identified in at least three different respects that are improper, even as to admitted evidence. They're improper because they suggest the defendant had a would commit the charged crimes and can be convicted on that basis. It's an emotional appeal to the jury, which asks it to consider things other than the facts. Mr. Marks, as I recall, you made all of these arguments to the trial judge, who obviously paid very, very close attention to the evidence in this case. And the trial judge rejected each of the arguments you're making. So through what lens should we view your argument? I don't think that there's any requirement that this court show deference to the trial court's judgment. The record exists for this court, and this is not like a credibility determination, you know, looking into the eyes of a witness, being aware of how someone testified. This is simply a question of the transcript by the prosecutor here, a very experienced prosecutor, the former chief of the criminal division, who made emotional appeals to the jury to stand up for the voters of Fall River and to convict Mr. Correa by invoking tropes of corrupt politicians rather than focusing on the evidence. And in particular, this court has identified that kind of appeal, asking a jury to step in the shoes of the community or some broader group. Have we identified that type of appeal as wrong or impermissible in a political corruption case? No, your honor. No. Because a political corruption case by its nature is different. What this defendant was charged with was was acting in violation of his obligations to the public. That's correct, your honor. And that is a fair distinction and makes this case different from, for example, the drug cases where this court has said, you know, don't talk about the wider impact of drugs on a community or violence on a community. But that being said, the victim in the Hobbs Act charges here, clearly the victim are the marijuana vendors who are supposedly shaken down and forced to pay bribes. It may be in a broader sense that, you know, every political corruption case involves victims, the public as a victim. But it's clear here the charge was that Mr. Correa shook down individual marijuana vendors and required them to pay bribes to get licenses. But the essence of the bribe taking is a violation of the public trust. That's correct, your honor. But I think no, no one who no public official who takes bribes is showing allegiance to his oath of office. That's completely different than cases like I do think that it's just as it would be inappropriate to invoke the scourge of drugs broadly in a drug case to invoke public betrayal broadly as the backdrop of the Hobbs Act, I think is also inappropriate. But here, even more significantly on the fact of the case. Was there any attempt to invoke public betrayal broadly? I thought what you're complaining about was was comments which specifically linked what this defendant was doing to statements that this defendant had made about how he conducted or planned to conduct his public office. No, that's right, your honor. Maybe my answer was unclear, but I was I was conceding that in a Hobbs Act case, it may be appropriate to address in some way issues about the misuse of public office. Of course, that's part of the offense. But here to talk about the voters and to invoke the voters and specifically, again, the comments are not made in the context of the bribes, the alleged bribes. The context are made the comments are made in the context of the campaign and statements made by Mr. Correa during his campaign, which were supposedly lies to the voters. The repeated statement is this man stood before the voters. He looked the voters in the eye. He lied to the voters, not about his dealings with marijuana vendors, not about his use of office. He wasn't even mayor at the time, not about his use of office to decide who got approvals or not. It was about his his dishonesty as a politician and an appeal to convict him on that basis. OK, you have reserved two minutes. We'll hear you later. Thank you, Mr. Marks. Please mute your camera and your audio at this time. Attorney Quinlivan, please unmute his device and introduce himself on the record to begin. Morning, Judge Lynch, and may it please the court, Mark Quinlivan on behalf of the United States. As we've set forth in our brief, the evidence in this case was sufficient to convict the defendant of wire fraud and rampant corruption when he was mayor of Fall River and his other claims. Fail as well. So but I want to go to the two issues that my friend has has argued this morning. First, as to the discerning verdict argument, the jury, in fact, acquitted the defendant, as as is accepted on two or three of the corruption counts. And I'm a judge, so in response to your question, I'm not aware of any case in which this court has said that the principle that a jury reaches a discriminating or discerning verdict in these circumstances does not apply if a district court subsequently dismisses a case. And I think that makes sense because the test of is whether the whether something was, for example, so exceptional or prejudicial that it impacted the jury's verdict. And so I think we're looking we're looking at the jury was overwhelmed by prejudice. And the fact that some verdicts were returned for the defendant seems to negate that inference or may negate that inference. That's what lies at the bottom of the discerning verdict cases. That's right. And I do want to make this additional point, which is that principle is not just one of general application, but the district court found that this was indeed a discerning and discriminating jury in this particular case. And I direct the court's attention to page it's page 27, 46 of the appendix. And this was the hearing on the defendant's post-trial motion. And the district court had already indicated that it might set aside certain of the wire fraud and tax fraud counts. But it nonetheless said that the jury's verdict was entitled to full recognition as a discriminating verdict. And if I could just take a moment and quote what the district court said, because I think it really bears on this issue, quote, It is, you know, certainly the case that it's too easy to say, well, the defendant was convicted on some things, but not others. That means the jury is discriminating in its judgment. I never buy that on its face, but I buy it here. This was a very careful jury. It was clear to me. They took four days to think this through. I encourage them, as you know, in the sense of saying, don't do it. This was a straw vote immediately. And then the court went on to say, and I believe that their judgment with respect to the charges on which they acquitted are entitled to full recognition as a discriminating verdict on the part of the jury. One can understand what choices they made here. So both on a macro level and on a micro level, the principle that the jury reached a discerning verdict applies in this case. Mr. Quinlivan, may I ask you a question about that? And what I'm thinking about is how broadly or narrowly a judge might write an opinion in this case on appeal. Well, part of what your opponent has argued is based on the district court later dismissing some of the charges, correct? So I was thinking about, well, so what if the judge had dismissed the charges before they went to the jury rather than waiting to see what the jury thought about them? I don't think that would change the equation any. It's sort of a damned if you do, damned if you I would think so. It seems to me that we should perhaps be discounting that factor, the fact that the judge found that several of the counts were not sufficiently proved. Do you have anything to say about that? Yes, Judge Howard. Two points. First off, I think that's absolutely the case. And I also, following up on the point that had been made earlier, I think to suggest otherwise would create a perverse incentive on the part of the government to have to cross appeal those counts. In this case, the defendant was sentenced to concurrent terms of imprisonment on all the or so it would not have impacted the sentence. And, you know, I also point out Judge Lynch mentioned that, you know, on a collateral basis, the district court, for example, dismissed six of the wire fraud counts on the ground that a stipulation the parties had entered into that said that the interstate commerce element of the offenses charged, the offenses being wire fraud, didn't establish that wires were used as opposed to the mails. So we obviously strongly disagree with that assessment. But in deciding whether to pursue a cross appeal, obviously the consequences and whether that impacts the overall appeal has to be taken into account. And so I would I do think that when you look at whether a jury reaches a discerning verdict, you do have to look at it in terms of what was before them at the time and whether something that is alleged to be so inflammatory or prejudicial has impacted their on some counts, indicates that it was not affected to that decree, whether that be in terms of spillover prejudice, the closing or on other claims. Mr. Quinlivan, there is a legal issue that is kind of lurking in this case, which the case may not need to resolve. But there is an argument that if someone is a victim of a crime, then that person, the victim, cannot be a co-conspirator in the crime. You argue against that proposition, although it has some intuitive appeal to it. But you say it doesn't matter in this case. And could you just explain that a bit more? Absolutely, Judge Lynch. So the jury could have found, based on the evidence, that the defendant conspired with David Hebert to extort from Matthew Pichette. And the jury could likewise have found that the defendant conspired with Genevieve Andrade to extort from Charles Salaby. And all the evidence we've set in the brief shows that a rational jury could easily come to that conclusion based on the evidence in this case. So this court doesn't need to reach that alternative theory that the defendant conspired directly with Mr. Pichette or Mr. Salaby in this case. Now, I think it's settled and the Supreme Court made clear in the Ocasio decision that somebody can be both a victim or a co-conspirator, although the court cautioned that mere acquiescence to a demand doesn't establish that one could be a co-conspirator. But as the district court found, this wasn't a mere acquiescence case. And just note briefly, for example, in the case of Charles Salaby, the initial demand was $250,000 and that it was negotiated. And they reached an agreement. And then thereafter, Mr. Salaby called Ms. Andrade to complain that he was being subjected to an annual $50,000 fee and that that wasn't part of the agreement. Ms. Andrade set up a meeting with the defendant at her office, and then they further negotiated an arrangement. So this isn't a case in which somebody simply acquiesces to a demand. Mr. Salaby and Mr. Pichette wanted these marijuana licenses. It was the only way that they could operate in the city of Fall River. And so for all these reasons, and as the district court found, this wasn't a mere acquiescence case. But I go back again to the point that I think the more powerful evidence is that the defendant conspired with Mr. Hebert to extort from Mr. Pichette and with Ms. Andrade to extort from Mr. Salaby. And so I don't think that this court does need to reach that issue. Thank you. If I could just go briefly to the closing issue, because I know that that's been raised. I think it's accepted now. There's five that the playing of the video in and of itself or the prosecutors contrasting what the defendant said during the video with the evidence in the case was not improper. And as the district court noted, it was relevant because it bore on the defendant's intent. So let me respond to some of the more the prosecutor repeatedly said that the defendant had looked the voters in the eyes. And I just direct your honor's attentions to the video itself. It's exhibit 157. Because what happens is the then mayor of Fall River is looking at the defendant and he challenges him. How much money did the investors give you for Snow Owl? And have you given any of it back? And in response, after briefly looking at the then mayor and saying that this showed his inexperience in the business committee, the business community, the defendant looks directly at the camera or alternately at the audience and says, among other things, that he had spent his investors money wisely, that he had given them a return on their investment and that they were partners in his business, all of which the evidence showed was either untrue or was inconsistent with other statements that he had made. So it was fair argument in these circumstances to use the phrase, looking the voters in the eye, because that's essentially what the defendant had done. The complaint is made that the prosecutor played the video on three separate occasions. But on each time, it was to contrast a specific statement with that defendant had made during the debate with the evidence in the case. And I know in addition, this only, contrary to the claim that this was the rhetorical centerpiece of the government's closing, it only was made in the context of discussion of the fraud counts. It wasn't, the video wasn't played or any argument, corresponding argument made in the rebuttal. In fact, the only reference to the debate at all in the rebuttal was simply the prosecutor making the rhetorical question, did he look confused in the debate in talking about why the jury shouldn't credit any claim that the defendant was just simply a confused kid. The defendant also says that the governor, the prosecutor engaged in an improper predisposition argument by saying that somebody who's willing to say X is willing to say anything to get what he wants. But this court has said that in the absence of an objection, it won't presume that the jury took the worst reading or interpretation of words. And I think the jury could have possibly understood that just to be rhetorical flourish at the end of the government's closing. But even if this court disagrees on that point, again, by my count, that statement, it was only made twice. It only takes up about 10 pages of a closing and rebuttal that spans almost 55 pages of transcript and which is otherwise unobjectionable. And I'd point out that's what makes this case, amongst other reasons, very different from Canty, where this court found that it was the combination of four separate improper statements that led to reversal. It was made in the context of, as I said, a permissible use of the video and contrasting the defendant's statement with what the evidence in Mr. Quinlivan. Spell out for me, please, the logic of your contrast argument. I had understood the theory of why it was not improper was that it reinforced that he made false assurances to the investor. This was another example of false assurances. Obviously, you don't want to set up a situation where a politician's campaign rhetoric becomes evidence in a criminal case later unless there is a viable theory of admissibility. And I don't think the term contrast quite does it for you. So, could you be more specific about why you considered this to be relevant and fair commentary? Yes, Judge Lynch. So, part of the defendant's defense in this case was that he lacked the intent to commit, for example, wire fraud because he was honest with his investors and genuinely believed that Snow Owl would work and that to the extent any statements were made to the contrary, as the defendant argues in his brief, that was mere puffery and did not suggest an intent to deceive. If I could just briefly finish the answer? Yes. So, it's relevant when the defendant is directly challenged by the then mayor in the debate about what happened to Snow Owl, what happened to all that investor money that the defendant responded by saying that his investors were partners in his business, that they loved Snow Owl, that he had spent his investors' money wisely and would do the same for the voters of Fall River. All of that, as I said, was untrue or contradicted by earlier statements the defendant had made in the case, and so it therefore bore on his intent as to whether he had engaged in a scheme to defraud or made false and in connection with that scheme. Finally, the point about the partners, that bore on part of the tax fraud counts where the defendant had amended his tax returns to say that he was operating a sole proprietorship, not a partnership, and so it was some indication that in fact he knew what the term partners meant in this context. Of course, the tax fraud cases have been dismissed, so in that sense, that comment isn't really even at issue in the case anymore. I'd ask my colleagues if they have any further questions. No. No, I'm content. No, thank you, Mr. Quinlivan. Thank you, Your Honors. Thank you, Mr. Quinlivan. Please mute your camera and your audio at this time. If Mr. Marks would reintroduce himself back on the record to begin, he has a two-minute rebuttal. Daniel Marks for the appellant, Jaisal Correa. Your Honors, saying that Mr. Correa lied in the campaign debate about his dealings with Snow Owl is relevant evidence that he likely lied to potential investors or that he's a liar more generally is a classic propensity argument, and when it's done in the context of the voters of Fall River, it's also an appeal to the jury to act as the conscience of that community. Those are classic improper arguments, but if I may... Can we break that down a little? As far as lying to the Snow Owl investments, isn't that essentially what he's charged with in the fraud counts? Yes, Your Honor, but the fact that he may have made a misstatement in some other context to other people who are not investors does not bear on whether he in fact... But it's a misstatement, what you characterize as a misstatement, the government characterizes as a lie. You know, I mean, it's a tomato-tomato situation, but the fact of the matter is he says something that is directly contrary to what he says in his testimony about his relationship with the investors. I'm struggling to see why that portion... No, I don't believe that. First of all, I'm happy to discuss it as a lie because that's what he's accused of, but it's not some sort of prior inconsistent statement. The point is he lied in the debate, so he probably lied on other occasions as well. That's the propensity jump that the government is asking the jury to make. Not that he said one thing in the debate and said something else, it's that he told the same lie in multiple contexts, and it makes it more likely. If I may, I just want to touch on one other issue that hasn't come up yet this morning, and that's the issue of spillover prejudice, which of course also relates to this issue of discernment and discrimination that we've talked about quite a bit. And I just want to point out, I think the government fundamentally misconstrues the framework in the following sense. First of all, the appellate issue of spillover prejudice only arises once there's been multiple counts of conviction and some have been vacated, and the question presented to this court is whether any evidence on those vacated counts would have been inadmissible. And here we have a tax case that has been thrown out entirely, and none of that evidence would have been admitted, whatever may have come in on the wirefrog part of the case. So I just wanted to clarify those standards as we understand them from the case law. Thank you, Your Honors. Okay, thank you very much. That concludes the argument in this case. Attorney Marks and Attorney Quinlivan should disconnect from the hearing at this time.